**SQUIRE PATTON BOGGS (US) LLP**
Eric J. Troutman (State Bar # 229263)
Eric.Troutman@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone:  +1 213 624 2500
Facsimile:   +1 213 623 4581

Petrina A. McDaniel (*admitted pro hac vice*)
Petrina.McDaniel@squirepb.com
1230 Peachtree St NE, Suite 1700
Atlanta, GA 30309
Telephone:  +1 678 272 3207
Facsimile:   +1 678 272 3211

Shing Tse (*admitted pro hac vice*)
Shing.Tse@squirepb.com
600 Travis Street, Suite 6200
Houston, Texas 77006
Telephone:  +1 713 546 5850
Facsimile:   +1 713 546 5830

Attorneys for Defendant
MUTUAL OF OMAHA MORTGAGE, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BAESEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MUTUAL OF OMAHA MORTGAGE, INC., a Delaware corporation,<br><br>Defendant. | Case No.  20CV0886 DMS AGS<br><br>**DEFENDANT MUTUAL OF OMAHA MORTGAGE, INC.'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE 12(B)(1)**<br><br>Action filed: May 12, 2020 |

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

Plaintiff David Baesel ("Plaintiff") alleges that Defendant Mutual of Omaha Mortgage, Inc. ("Defendant" or "MOMI") violated the Telephone Consumer Protection Act ("TCPA") by placing calls to a residential cell phone registered on the National Do Not Call Registry ("DNC") without prior express written consent. Plaintiff alleges six phone calls were attempted, three of which were unanswered and for which no message was left.

The Court should dismiss Plaintiff's claims under 47 U.S.C. § 227(c) relating to these three unanswered calls, as the Complaint fails to demonstrate they caused concrete harm. Each individual call at issue gives rise to a separate TCPA claim, requiring separate standing.[2] And courts in the Ninth Circuit have held that an attempted call that is neither heard nor noticed by the would-be recipient does not constitute the requisite harm for Article III standing under the TCPA. This is consistent with the rule that a prerecorded message is only actionable if it is actually played.[3] Here, however, Plaintiff does not allege he noticed three unanswered calls, much less that they harmed him in some concrete fashion. With no allegations of concrete harm, Plaintiff has failed to establish Article III standing—and thus subject matter jurisdiction—to bring his claims under the DNC provision, § 227(c), of the TCPA.

As Plaintiff has already conceded that these unanswered calls cannot form the basis of an individual or class claim under the prerecorded calls section of the TCPA, § 227(b), [ECF Nos. 14, 15], by extension, these calls likewise do not give rise to an

---

[2] *See Mix v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 190787, at *6 n.4 (W.D. Wash. Nov. 17, 2017).

[3] *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015) ("To be liable under the 'artificial or prerecorded voice' section of the TCPA, we conclude that a defendant must make a call and an artificial or prerecorded voice must actually play").

- 2 -
MOTION TO DISMISS COMPLAINT

1  actionable claim under § 227(c).  The Court should therefore dismiss Plaintiff's
2  individual and class DNC claims relating to the three unanswered calls for which no
3  message was left, and find that Plaintiff has failed to allege the harm necessary for
4  Article III standing.

## II.  BACKGROUND

Plaintiff alleges that Defendant MOMI violated the TCPA by placing calls to his residential cell phone number that is registered on the DNC using a prerecorded voice message without his prior express written consent.  *See* Complaint ¶¶ 30-31, 32-41.  Specifically, Plaintiff alleges that MOMI placed six unconsented-to phone calls to his cell phone from the phone number 863-658-6408.  *Id*. ¶ 22.  Plaintiff alleges that he received calls on:

- January 15, 2020 at 6:21 PM
- February 5, 2020 at 8:42 AM
- February 18, 2020 at 12:50 PM

*Id*. ¶ 33.  These three calls "were not answered by Plaintiff and no message was left." *Id*. ¶ 34.  Significantly, nowhere in the Complaint does Plaintiff allege that he heard or otherwise noticed any of these three phone calls.  *See id*.

Plaintiff alleges that he received three more phone calls on March 5, 2020, March 17, 2020, and April 15, 2020.  *Id*. ¶¶ 35-37.  For these three phone calls, Plaintiff alleges that he received a prerecorded voice message from an individual named Kevin.  *Id*.  Plaintiff further states that, "Upon investigation by *Plaintiff's attorneys*, when 863-658-6408 is called, an automated system answers identifying the company …" *Id.* ¶ 39 (emphasis added).  Thus, based on the face of Plaintiff's Complaint, Plaintiff was unaware that MOMI had allegedly called him until his attorneys "investigated" the number. *Id.* Plaintiff alleges that he did not provide prior express written consent to MOMI or any of its affiliates to make any of these calls to his cell phone number.  *Id*. ¶¶ 40-41.

According to the Complaint, Plaintiff suffered harm as a result of these alleged phone calls from MOMI in the form of "annoyance, nuisance, and invasion of privacy." *Id*. ¶ 42. The Complaint further contends that the calls "disturbed Baesel's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone." *Id*.

Based on these allegations, Plaintiff brings two causes of action under the TCPA on behalf of himself and two putative classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called (2) using a pre-recorded voice message (3) on their cell phone number or residential landline (4) for substantially the same purpose Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff, or (b) Defendant did not obtained prior express written consent.

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time (2) on their residential cell phone number or residential landline (3) within any 12-month period where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days (4) for substantially the same purpose Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff, or (b) Defendant did not obtain prior express written consent.

*Id.* ¶ 44.[4]

On July 16, 2020, the Court held a telephonic conference to discuss the basis for the instant motion. Counsel for Plaintiff clarified that the claims asserted in the first cause of action under § 227(b)(1)(A) and (B) of the TCPA (the prerecorded voice claims) are not based on the three unanswered calls for which Plaintiff does not allege he received a prerecorded message. Instead, Plaintiff's counsel stated that the last three calls for which Plaintiff alleges he received a prerecorded voice message form the basis of his prerecorded voice claims. Additionally, Plaintiff asserts that the three unanswered calls, for which no prerecorded voice message was left, are relevant only to the claims asserted in the second cause of action under § 227(c) (the DNC claims).

Following the conference, the Court entered an order directing the parties to "file a joint motion and proposed order confirming the first three calls do not apply to the no consent class," and for MOMI to file its Motion on or before July 23, 2020. [ECF No. 14]. The parties filed a joint motion on July 21, 2020, confirming that "the first three calls to Plaintiff allegedly made by Defendant on January 15, 2020, February 5, 2020, and February 18, 2020 are not subject to Plaintiff's prerecorded voice calls or class claims under 47 U.S.C. § 227(b)…" [ECF No. 15]. The Court granted the joint motion on July 22, 2020, ordering that, "the first three calls to Plaintiff allegedly made by Defendant are not subject to Plaintiff's individual or class prerecorded voice calls claims. Defendant may file a motion to dismiss regarding these three calls under the Do Not Call registry provision, 47 U.S.C. § 227(c)(5)." [ECF No. 16]. MOMI's Motion therefore seeks dismissal of Plaintiff's individual and class DNC claims for the three calls that Plaintiff did not answer and for which no message was left.

---

[4] Plaintiff improperly defines these classes, and the Court should strike the class allegations for the reasons outlined in MOMI's contemporaneously filed Motion to Strike.

- 5 -
MOTION TO DISMISS COMPLAINT

SQUIRE PATTON BOGGS (US) LLP
6200 Chase Tower
600 Travis Street,
Houston, TX 77002

## III. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS RELATED TO THE THREE UNNOTICED CALLS FOR LACK OF ARTICLE III STANDING

The Court should dismiss Plaintiff's DNC claims under § 227(c) of the TCPA related to the three unanswered calls for which Plaintiff does not allege that he received a prerecorded voice message because the Complaint fails to allege facts sufficient to show that Plaintiff suffered a concrete harm as a result of these three alleged calls.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge a plaintiff's standing in a motion to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Without standing, a federal court has no subject matter jurisdiction over a plaintiff's claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all" and "the only function remaining to the court is that of announcing the fact and dismissing the cause.").

"The 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. The injury-in-fact element requires that the injury be both "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Liujan*, 504 U.S. at 560).

The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). At the pleadings stage, a plaintiff must "clearly . . . allege facts demonstrating" each element. *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

### B. Plaintiff Must Have Standing for Each Call That He Claims Violated the TCPA.

"[A] 'plaintiff must demonstrate standing for each claim he seeks to press.'" *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1024 (9th Cir. 2020) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)); *see also Branca v. Bai Brands, LLC*, 2019 U.S. Dist. LEXIS 37105, at *34 (S.D. Cal. Mar. 7, 2019) ("A plaintiff must demonstrate standing for each claim he or she seeks to press and for each form of relief sought"). "[E]ach alleged violation [of the TCPA] is a separate claim[.]" *Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 190787, at *6 n.4 (citation omitted). This means that a TCPA plaintiff "must establish an injury in fact caused by each individual call." *Id*. Thus, the Ninth Circuit firmly holds that Article III standing requirements apply regardless of the specific provision under which a TCPA plaintiff seeks to recover. *See, e.g., Winters v. Ridgewood Indus.*, 2020 U.S. Dist. LEXIS 100192, at *3 (E.D. Cal. June 5, 2020 (citation omitted) ("The standing requirement applies to '**all** claims litigated in a federal court. . .'") (emphasis added); *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 560 (9th Cir. 2019) ("A plaintiff must establish standing for **every** claim it wishes to challenge, even where a plaintiff raises the same legal challenge to multiple sections of the same statute") (emphasis added). It is therefore irrelevant whether Plaintiff seeks to recover under the section 227(b) or 227(c) of the TCPA—he must establish standing for *each* call for which he seeks relief.

Accordingly, it is within the Court's powers to dismiss Plaintiff's TCPA claims arising out of some calls for which he lacks standing, while leaving the other claims intact. *See United States Equal Opportunity Comm'n v. Dillard's, Inc.*, 2011 U.S. Dist. LEXIS 76206, at *11 (S.D. Cal. July 14, 2011) ("[D]ismissal of only those claims for which the court lacks jurisdiction is appropriate, given the Court's obligation to dismiss claims for which it lacks subject-matter jurisdiction and the Court's inherent power to control its [own] docket"). Thus, the Court should dismiss

Plaintiff's individual and class DNC claims for the three calls that Plaintiff did not answer and for which no message was left.

### C. Plaintiff lacks Article III standing to bring claims related to the unanswered calls because he has failed to allege any concrete harm.

The Supreme Court emphasized in *Spokeo* the importance of the Article III standing requirement in statutory causes of action such as this one, requiring a concrete, *de facto* injury:

> Congress' role in identifying and elevating tangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement when a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.

*Spokeo*, 136 S. Ct. at 1549. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. Thus, the Court held that the mere violation of a statute does not in itself constitute an injury in fact. Instead, standing requires that a plaintiff suffer a "real" harm as a result of the statutory violation, rather than a "conjectural or hypothetical" one. *Id*. at 1548.

The Ninth Circuit has applied *Spokeo* in the context of TCPA actions, concluding that invasion of privacy and disruption of solitude are sufficiently concrete harms. *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). There, the plaintiff alleged that he received two unconsented-to text messages, which he claimed "caused consumers actual harm," including "the aggravation that necessarily accompanies wireless spam" and that consumers "pay their cell phone service providers for the receipt of such wireless spam." *Id*. at 1041. The court distinguished *Spokeo*, stating that "[u]nlike in *Spokeo*, where a violation of a procedural requirement minimizing reporting inaccuracy may not cause actual harm or present any material risk of harm . . . the telemarketing text messages at issue here,

absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA." *Id.* at 1043. And because the text messages alleged by the plaintiff "invade[d] the privacy and disturb[ed] the solitude of their recipients," the court concluded that alleged harm was sufficiently concrete to establish Article III standing. *Id.*

Following *Van Patten*, district courts, including those in the Southern District of California, have held that even a single unanswered phone call *may*—but not always—cause a sufficiently concrete injury to establish Article III standing. *See, e.g., Shuckett v. DialAmerica Mktg.*, 2019 U.S. Dist. LEXIS 29598 (S.D. Cal. Feb. 22, 2019) (hereinafter "*Shuckett I*"). In *Shuckett I*, the plaintiff allegedly received one unconsented phone call from the defendant that she did not answer. *Id.* at *3. She alleged that this call violated the TCPA and caused her nuisance and invaded her privacy. *Id.* Though the court denied defendant's motion to dismiss, Chief Judge Larry Burns left the door open for future attacks on Article III standing with a critical caveat: "[h]ad the call gone entirely unnoticed, [ ] this would be a different case." *Id.* at *5. Because at that stage of the proceedings, there was no indication that plaintiff was "entirely unaware" of the call, the court construed the facts in plaintiff's favor. *Id.* at *6. Notably, however, the court granted summary judgment in favor of defendant because plaintiff failed to adduce any evidence showing that she noticed the call at the time it was placed. *Shuckett v. DialAmerica Mktg.*, 2019 U.S. Dist. LEXIS 127049, at *9-11 (S.D. Cal. July 29, 2019) (hereinafter, "*Shuckett II*") (emphasis added). "Whether [plaintiff] was aware of the call or not is important because, as other courts in this circuit have noted, an unnoticed call may 'violate the TCPA but not cause any concrete injury.'" *Id.* at *7 (quoting *Juarez v. Citibank, N.A.*, 2016 U.S. Dist. LEXIS 118483, at *3 (N.D. Cal. Sept. 1, 2016)) (citing *Lemieux v. Lender Processing Ctr.*, 2017 U.S. Dist. LEXIS 47139, at *4 (S.D. Cal. Mar. 29, 2017) ("A bare allegation of a violation of the TCPA could be an insufficient

- 9 -
MOTION TO DISMISS COMPLAINT

allegation of injury to establish standing, such as when a telephone call is unheard or unanswered")).

Specifically, the court noted that, "[w]hile a missed call may be sufficient to confer standing if the plaintiff can demonstrate that he or she was aware of the call and it caused nuisance, it is not sufficient for a plaintiff to allege simply that he or she ***would have been aware*** of the call given what they were doing on that day." *Shuckett II*, 2019 U.S. Dist. LEXIS 127049, at *9-10 (emphasis added). And because plaintiff failed to prove that she was actually aware of the phone call, the court concluded that she failed to meet her burden of demonstrating that she suffered a concrete, non-conjectural injury. *Id*. at *10-11.

Significantly, the Ninth Circuit's holding in *Van Patten* did not mandate a contrary holding in *Shuckett I or II*, as the text messages at issue in *Van Patten* were noticed by the plaintiff and therefore amounted to "unsolicited *contact*." *See Van Patten*, 847 F.3d at 1043 (emphasis added). To the contrary, there are no allegations that such contact was made here, nor can Plaintiff plead otherwise, because Plaintiff did not answer the three calls at issue and had no idea that MOMI had allegedly even called Plaintiff until his attorneys "investigated" the number. Complaint, ¶ 39. Plaintiff's privacy therefore could not have been infringed upon by phone calls of which he was entirely unaware. *Id*.

### 1. **Plaintiff does not plead that he noticed the three calls.**

The *Shuckett* court's Article III analysis turned on whether the plaintiff was aware of the calls at issue. As the court observed, "Whether [plaintiff] was aware of the call or not is important because . . . an unnoticed call may 'violate the TCPA but not cause any concrete injury.'" *Shuckett II*, 2019 U.S. Dist. LEXIS 127049, at *7. And in *Shuckett I*, the court ruled at the motion to dismiss stage that the defendant needed to offer more than a self-serving declaration to allege that plaintiff was entirely unaware of the call. The court noted, "[Defendant's] contention that [plaintiff] did not know that [Defendant] had dialed her cell number … until [] counsel voluntarily

informed plaintiff's counsel of that fact" was supported only by a declaration, and thus, there was no evidence or allegation that plaintiff was "entirely unaware of it." *Shuckett I*, 2019 U.S. Dist. LEXIS 29598, at *5-6.

Contrary to the facts in *Shuckett I*, MOMI needs no declaration here because Plaintiff admits that he was unaware that MOMI allegedly made the three calls until after his attorneys informed him of the source of the calls months later.[5]  Plaintiff expressly alleges that, "Upon investigation by **Plaintiff's attorneys**, when 863-658-6408 is called, an automated system answers identifying the company …" Complaint, ¶ 39 (emphasis added).  Plaintiff therefore concedes that he had no idea that MOMI allegedly called him until his attorneys "investigated" the number. *Id*.  Further, for the calls Plaintiff allegedly received but "were not answered" on January 15, February 5, and February 18, 2020, the Complaint does not contain any factual allegations indicating that the phone was in Plaintiff's possession, that Plaintiff heard or otherwise noticed the calls, and that the unanswered calls were "received" in a manner to cause nuisance.  *See* Complaint, ¶¶ 33-34. The Complaint merely indicates that the "calls were not answered by Plaintiff and no message was left."  Complaint, ¶ 34.  There are no allegations indicating, for example, that Plaintiff noticed the call but chose to decline it.

---

[5] The Complaint alleges that Plaintiff "received" the three unanswered calls for which no message was left between January 15, 2020 and February 18, 2020. Complaint, ¶¶ 33-34.  The Complaint then alleges that between March 5, 2020 and April 15, 2020, Plaintiff received calls containing a generic "pre-recorded message" from "Kevin," seeking to share "some great news" with him. *Id*. ¶¶ 35-37. Only after Plaintiff received these three pre-recorded voice messages does the Complaint allege that "[u]pon investigation by Plaintiff's attorneys," a voicemail on the callback number identifies MOMI. *Id*. ¶ 39.  Thus, based on the sequence of the allegations in the Complaint, the Court may plausibly infer that Plaintiff's attorneys did not investigate the "pre-recorded message" from "Kevin" until after April 15, 2020—nearly two months after the third unanswered call on February 18, 2020. The Court may also plausibly infer that Plaintiff did not notice the first three unanswered calls at the time Plaintiff allegedly received them because no "investigation" occurred after Plaintiff "received" these calls.

- 11 -
MOTION TO DISMISS COMPLAINT

Indeed, based on the face of the Complaint, the Court can infer that Plaintiff did not know these three alleged calls were even "received" until after an "investigation." *See* Complaint, ¶ 39. It is also plausible based on the allegations in the Complaint that Plaintiff did not answer the calls because he was "entirely unaware" of them, *Shuckett I*, 2019 U.S. Dist. LEXIS 29598, at *5-6, and that he did not learn that MOMI allegedly called him until his attorneys' apprised him of the content of the recording left on the call-back number. *See id.*

Because Plaintiff cannot now plead otherwise, under both *Van Patten* and *Shuckett I* and *II*, Plaintiff suffered no invasion of privacy, disruption of solitude, or any other concrete harm recognized by courts in the Ninth Circuit for these three calls. *See Reddy v. Litton Indus.*, 912 F.d 291, 296-97 (9th Cir. 1990) (citation omitted) (holding that a complaint may only be amended to "allege other facts consistent with the challenged pleading"); *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (citation omitted) ("A party cannot amend pleadings to 'directly contradict[t] an earlier assertion made in the same proceeding").

### 2. Shuckett's standing analysis extends to all claims under the TCPA.

The *Shuckett* cases are instructive examples of courts in the Southern District refusing to find sufficient Article III injury where a plaintiff does not allege that the phone was in her possession such that she noticed the call, and the receipt of the missed call resulted in a manner that caused a nuisance. *Shuckett II*, 2019 U.S. Dist. LEXIS 127049, at *10. Notably, the *Shuckett* court's holding is not limited to claims brought under any specific provision of the TCPA because standing requirements apply to all claims litigated in federal court. *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (N.D. Cal. 2015) ("[T]he Article III standing requirement is a constitutional limitation that applies to all claims litigated in federal court"). This rule makes sense:  statutory violations of the TCPA's DNC restrictions do not harm the would-be recipient any more than violations of the prerecorded voice calls provision.

*Biological Diversity*, 946 F.3d at 560.  Thus, the *Shuckett* court relied on both *Spokeo* and *Van Patten* to find that when an attempted call that is neither answered nor noticed by the would-be recipient, the plaintiff does not suffer the requisite harm for Article III standing under the TCPA, and this rationale equally applies to all TCPA claims, including those under the DNC provision.  *Shuckett II*, 2019 U.S. Dist. LEXIS 127049, at *4-5, 7.

Accordingly, Plaintiff pleads no sufficient Article III harm, and the Court should dismiss Plaintiff's DNC claims under Section 227(c) related to the three unanswered calls for which Plaintiff does not allege that he received a prerecorded voice message.

## IV. CONCLUSION

For the foregoing reasons, Defendant Mutual of Omaha Mortgage, Inc. respectfully requests that the Court dismiss Plaintiff's claims under 47 U.S.C. § 227(c) relating to the three unanswered calls pursuant to Federal Rule 12(b)(1) for failure to allege a concrete harm under Article III.

DATED: July 23, 2020         SQUIRE PATTON BOGGS (US) LLP

*/s/ Petrina A. McDaniel*
Eric J. Troutman (State Bar # 229263)
eric.troutman@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
T: 213.624.2500
F: 213.623.4581

Petrina A. McDaniel (*admitted pro hac vice*)
Petrina.McDaniel@squirepb.com
1230 Peachtree St NE, Suite 1700
Atlanta, GA 30309
T: 678.272.3207
F: 678.272.3211

Shing Tse (*admitted pro hac vice*)
Shing.Tse@squirepb.com
600 Travis Street, Suite 6200
Houston, Texas 77006
T: 713.546.5850
F: 713.546.5830

Attorneys for Defendant

/4/AMERICAS

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 23, 2020, a copy of the foregoing **DEFENDANT MUTUAL OF OMAHA MORTGAGE, INC.'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT** has been served via the CM/ECF filing system, to the following:

Amanda Fay Benedict
Law Office of Amanda Benedict
7710 Hazard Center Drive
Suite E-104
San Diego, CA 92108
Telephone:  (760) 822-1911
Facsimile:   (760) 452-7560
Email: amanda@amandabenedict.com

Avi Robert Kaufman
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone:  (305) 469-5881
Email: kaufman@kaufmanpa.com

Rachel Kaufman
Kaufman P.A.
31 Samana Drive
Miami, FL 33133
Telephone:  (305) 773-6641
Email: rachel@kaufmanpa.com

*Attorneys for Plaintiff*

                                            */s/ Petrina A. McDaniel*
                                            Petrina A. McDaniel

SQUIRE PATTON BOGGS (US) LLP
6200 Chase Tower
600 Travis Street,
Houston, TX 77002