**SQUIRE PATTON BOGGS (US) LLP**
Eric J. Troutman (State Bar # 229263)
Eric.Troutman@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: +1 213 624 2500
Facsimile: +1 213 623 4581

Petrina A. McDaniel (*admitted pro hac vice*)
Petrina.McDaniel@squirepb.com
1230 Peachtree St NE, Suite 1700
Atlanta, GA 30309
Telephone: +1 678 272 3207
Facsimile: +1 678 272 3211

Shing Tse (*admitted pro hac vice*)
Shing.Tse@squirepb.com
600 Travis Street, Suite 6200
Houston, Texas 77006
Telephone: +1 713 546 5850
Facsimile: +1 713 546 5830

Attorneys for Defendant
MUTUAL OF OMAHA MORTGAGE, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BAESEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MUTUAL OF OMAHA MORTGAGE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 20CV0886 DMS AGS<br><br>**DEFENDANT MUTUAL OF OMAHA MORTGAGE, INC.'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS FROM PLAINTIFF'S COMPLAINT**<br><br>Action filed: May 12, 2020 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The Court should strike Plaintiff David Baesel's ("Plaintiff") class allegations from the Complaint because the proposed classes are facially deficient and cannot be certified as defined as a matter of law. Allowing the class definitions to survive the pleadings stage will lead to a mess in the discovery phase and burden the parties and the court alike. The Plaintiff cannot—and will not—seek to certify the defined classes; the defined classes appear to be nothing more than a placeholder with Plaintiff intending to move the target to something better defined later in the case. But the Court should require Plaintiff to plead plausibly certifiable classes now—before discovery—as the rules require.

Plaintiff's proposed classes are improper failsafe classes, as determining whether a member qualifies for membership under either class requires the Court to assess the merits of his or her claims. That is per se and definitively inappropriate. Specifically, class membership turns on whether the calls were made without prior express written consent. The absence of proper consent is a key substantive component of a TCPA claim. So the Court will need to impermissibly determine whether class members have meritorious claims in order to determine whether they are in the classes in the first place.

Plaintiff's proposed classes are further defective as they are not objectively defined. Rather, class membership turns on vague and subjective criteria regarding whether an individual received a call for "substantially the same purpose" as the calls allegedly made to Plaintiff. But not only does the Complaint fail to clarify what purposes are "substantially the same" for determining class membership, it fails to even identify the purpose of the alleged calls to Plaintiff. Simply put, the classes are not clearly and objectively defined as required under Rule 23.

Plaintiff's proposed classes are also impermissibly overbroad. The class definitions, as proposed, would include individuals who lack standing to bring a

TCPA claim against MOMI, because neither class is limited to individuals who suffered a concrete harm. Such class definitions are plainly overbroad and cannot be certified as a matter of law.

And contrary to Plaintiff's contentions, neither of the proposed classes are certifiable under either Rule 23(b)(2) or 23(b)(3). Both proposed classes are defined to include individuals to whom MOMI called "for substantially the same purpose Defendant called Plaintiff," and without prior express consent. But nothing in the Complaint suggests that either criteria is susceptible to class-wide proof. Quite the opposite, assessing the purpose of the call and whether MOMI had prior express consent to make the call would require the Court to conduct individualized inquiries, effectively resulting in a series of mini trials. Accordingly, neither proposed class may be certified under Rule 23(b)(3). Nor are the classes certifiable under Rule 23(b)(2), because Plaintiff and the putative class members primarily seek individualized awards of monetary damages under the TCPA, which is improper under a Rule 23(b)(2) class.

For these reasons, and for the reasons set forth below, the Court should strike Plaintiff's class allegations now as the deficiencies in Plaintiff's putative classes are inherent in the class definitions and cannot be cured by discovery.

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Defendant Mutual of Omaha Mortgage, Inc. ("MOMI" or "Defendant") violated the Telephone Consumer Protection Act ("TCPA") by placing calls to his residential cell phone number that is registered on the National Do Not Call Registry ("DNC") using a pre-recorded voice message without his prior express written consent. *See* Complaint ¶¶ 30-31, 32-41. Specifically, Plaintiff alleges that MOMI placed six unconsented-to phone calls to his cell phone from the phone number 863-658-6408. *Id*. ¶ 22. Plaintiff alleges that three of the calls "were not answered by Plaintiff and no message was left." *Id*. ¶¶ 33-34. For the other three phone calls, Plaintiff alleges that he received a pre-recorded voice message from an individual

purporting to be an agent of MOMI. *Id.* Plaintiff alleges that he did not provide prior express written consent to MOMI to make any of these calls to his residential cell phone number. *Id.* ¶¶ 40-41.

According to the Complaint, Plaintiff suffered harm as a result of these alleged phone calls from MOMI in the form of annoyance, nuisance, and invasion of privacy." *Id.* ¶ 42. The Complaint further contends that the calls "disturbed Baesel's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone." *Id.*

Based on these allegations, Plaintiff brings two causes of action under the TCPA on behalf of himself and two putative classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called (2) using a pre-recorded voice message (3) on their cell phone number or residential landline (4) for substantially the same purpose Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff, or (b) Defendant did not obtained prior express written consent.

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time (2) on their residential cell phone number or residential landline (3) within any 12-month period where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days (4) for substantially the same purpose Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff, or (b) Defendant did not obtain prior express written consent.

*Id.* ¶ 44. Plaintiff contends that his proposed classes may be certified under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). *Id.*

## III.  ARGUMENT

### A.  Legal Standard

"The class action is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A court should address whether to certify a purported class "[a]t an early practicable time," and if a court determines that the requirements of Rule 23 cannot be satisfied, it may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(c)(1)(A), (d)(1)(D).  While in some instances discovery may be needed to aid in the determination of whether a class action is appropriate, "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Kay v. Wells Fargo & Co. N.A.*, No. C 07-01351 WHA, 2007 U.S. Dist. LEXIS 55519, at *5 (N.D. Cal. July 24, 2007) ("Class allegations can, however, be stricken at the pleading stage.").

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading. . . any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). A motion to strike is particularly proper when "allegations create[] serious risks of prejudice to [the defendant], delay, and confusion of the issues." *Id.* at 1528. A court may strike class

allegations at the pleadings stage "if the complaint plainly reflects that a class action cannot be maintained." *Carpenter v. Petsmart, Inc.*, No. 19-CV-1731-CAB-LL, 2020 U.S. Dist. LEXIS 35459, at *4 (S.D. Cal. Mar. 2, 2020) (citation omitted).

Striking a class definition at the pleadings stage is particularly appropriate when it is facially uncertifiable in a manner that discovery cannot resolve. *See*, *e.g.*, *Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1166-67 (N.D. Cal. 2008) (striking class allegations on the grounds that the proposed class was an improper fail-safe). Allowing a facially uncertfiable class to proceed beyond the pleading stage can result in significant prejudice to a defendant. The pleadings, including allegations of the complaint, govern the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). Indeed, courts have recognized the dangers of allowing a facially uncertifiable class to proceed to discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-60 (2006) (emphasizing the expense and burden of discovery in class actions and stressing that neither "careful case management," nor "careful scrutiny of [the] evidence at the summary judgment stage," will protect defendants from incurring enormous discovery costs); *see also Yagman v. Allianz Ins.*, No. 05-1126, 2015 U.S. Dist. LEXIS 127884, at *12 (C.D. Cal May 11, 2015) (failing to strike plaintiff's class allegations "would inject significant uncertainty as to the scope of discovery and other pre-trial proceedings").

**B.     Plaintiff's Class Allegations Must Be Stricken Because They Fail to Meet the Requirements of Rule 23.**

All the Court must do to determine the classes should be stricken is to read the definitions. The class definitions contain virtually no facts—they just contain assertions regarding the quality of the class member's claims from a substantive perspective. Such a class is per se uncertifiable. *See Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 U.S. Dist. LEXIS 3410, at *24 (N.D. Cal. Jan. 15, 2010) ("A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class").

### 1. Plaintiff's Class Definitions Must be Stricken Because They Are Failsafe Classes.

"[W]hen the class itself is defined in a way that precludes membership unless the liability of the defendant is established," it constitutes an improper fail-safe class. *Kamar v. RadioShack Corp.*, 375 F. App'x. 734, 736 (9th Cir. 2010) (noting that a proposed class is a fail-safe and thus not "manageable," where class definition is "one that determines the scope of the class only once it is decided that a class member was actually wronged."). In a failsafe class, "once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class." *Id*. Such classes are especially problematic because members of the class essentially already know they are going to win their case before they have to decide whether or not to opt out of the class. *See Dixon v. Monterey Fin. Servs., Inc.*, No. 15-cv-03298-MMC, 2016 U.S. Dist. LEXIS 111687, at *7 (N.D. Cal. Aug. 22, 2016) (striking Plaintiff's proposed class, in part, because it was an improper fail-safe class); *Chavez v. Air Prods. & Chems. Inc.*, 2016 U.S. Dist. LEXIS 189276, at *254 (C.D. Cal. Feb. 24, 2016) (striking several proposed subclasses as improper fail-safes because it was not "administratively feasible for the court to ascertain whether an individual is a member . . . where Plaintiff's subclasses provide no precise or objective criteria" (internal quotation marks omitted)).

Here, the Court should strike the definitions of both Plaintiff's Pre-recorded No Consent Class and Do Not Call Registry Class because they require the Court to consider the merits of the putative class members' claims in determining class membership. *See Dixon v. Monterey Fin. Servs.,* No. 15-cv-03298-MMC, 2016 U.S. Dist. LEXIS 82601, at *11 (N.D. Cal. June 24, 2016) (citation and internal quotation marks omitted) (noting that certification of a fail-safe class would "not only be palpably unfair to the defendant, it would be unmanageable – for example, to whom should the class notice be sent?"). As in *Hanni* and *Dixon*, determining class membership would require the court to conduct individualized fact-finding proceedings to determine a key merits issue of each putative class members' claim—

namely, whether MOMI had prior express written consent before making calls to them. Both Plaintiff's proposed Pre-recorded No Consent Class and Do Not Call Registry Class include individuals who received calls from MOMI "for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff, or (b) Defendant did not obtain prior express written consent." *See* Complaint, ¶ 44.

Plaintiff contends that MOMI did not have prior express written consent to make any of the alleged calls to him, Complaint, ¶ 41, and therefore seeks to represent classes of individuals to whom MOMI made calls without first obtaining prior express written consent. Thus, a jury would need to assess the validity and strength of MOMI's evidence on consent before a class member could be identified. And with that crucial merits inquiry determined in the class members' favor, MOMI is unfairly prejudiced by a proceeding where the class members cannot lose—either they are determined to win on a critical merits issue or they are not in the classes at all. *See Dixon*, 2016 U.S. Dist. LEXIS 111687, at *7 (discussing inherent unfairness in permitting merits-based definitions to survive the pleadings stage). Accordingly, because class membership in Plaintiff's proposed classes turns on the resolution of merits-based inquiries, the Court should strike the proposed classes.

### 2. Plaintiff's Proposed Classes Are Not Objectively Defined Because They Turn on Vague, Subjective Criteria.

Although the Ninth Circuit does not impose an "administrative feasibility" requirement on Rule 23 classes, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1122 (9th Cir. 2017), a class must nevertheless be sufficiently defined with "objective criteria" to be certified. *Backhaut v. Apple Inc.*, No. 14-CV-02285-LHK, 2015 U.S. Dist. LEXIS 107519, at *32 (N.D. Cal. Aug. 13, 2015); *see also J.L. v. Cissna*, No. 18-cv-04914-NC, 2019 U.S. Dist. LEXIS 16761, at *18 (N.D. Cal. Feb. 1, 2019) ("[A] proposed class must be ascertainable in the sense that the proposed class must be

sufficiently defined and not vague"). Indeed, Ninth Circuit authority is clear that a class must be clearly and objectively defined to be certifiable. *See Briseno*, 844 F.3d at 1124 nn.3-4 (noting that although some courts use the word "ascertainability" to deny certification of classes that are not clearly or objectively defined, the Ninth Circuit addresses such "definitional deficiencies" through its analysis of Rule 23's enumerated requirements); *see also Cissna*, 2019 U.S. Dist. LEXIS 16761, at *18 ("A proposed class is ascertainable if it can be defined with 'objective criteria'"); *Conde v. Sensa*, No. 14-cv-51 JLS WVG, 2018 U.S. Dist. LEXIS 154031, at *50 (S.D. Cal. Sep. 10, 2018) ("A class is ascertainable if it is defined by 'objective criteria'"); *United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, No. 2:15-cv-00799-KJM-DB, 2020 U.S. Dist. LEXIS 7090, at *14 (E.D. Cal. Jan. 14, 2020) (citation omitted) ("[I]t is, nonetheless, essential that the 'identity of class members must be ascertainable by reference to objective criteria'"). "[A] class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Conde*, 2018 U.S. Dist. LEXIS 154031, at *50.

Thus, even if the classes were not failsafe in nature—a contention MOMI disputes—the mere fact that membership turns on the outcome of a merits determination, as opposed to specific and objective factual criteria, is sufficient to assure that certification be denied. *See Dixon*, 2016 U.S. Dist. LEXIS 111687, at *7 (discussing inherent unfairness in permitting merits-based definitions to survive the pleadings stage); *see also Hanni*, 2010 U.S. Dist. LEXIS 3410, at *24 (It also makes it impossible to identify who is in the class before merits determinations are made, which is *per se* improper); *see also Messner v. Northshore Univ. HealthSystem, Inc.*, 669 F.3d 802, 825 (7th Cir. 2012) ("The problem posed by class members whose claims may fail on the merits for individual reasons is the obverse of a different problem with class definition: the problem of the 'fail-safe' class: one that is defined so that whether a person qualifies as a member depends on whether the person has a

SQUIRE PATTON BOGGS (US) LLP
6200 Chase Tower
600 Travis Street,
Houston, TX 77002

valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."). What is more, courts are clear that "an implied prerequisite to class certification is that the class must be sufficiently definite." *In re Seagate, LLC Litig.*, No. 16-cv-00523-JCS, 2019 U.S. Dist. LEXIS 10234, at *22 (N.D. Cal. Jan. 22, 2019) (quoting *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1074, 1089 (N.D. Cal. 2011)). That is, "the proposed class must be sufficiently defined and not vague[.]" *Cissna*, 2019 U.S. Dist. LEXIS 16761, at *18; *see also Wortman v. Air New Zealand*, 326 F.R.D. 549, 554 n.3 (N.D. Cal. 2018) (citing *Briseno*, 844 F.3d at 1123-24) (holding that the Ninth Circuit's rejection of a "separate administrative feasibility prerequisite" is "distinct from requiring that classes be clearly or objectively defined" and that plaintiffs must still "demonstrate that an identifiable and ascertainable class exists.").

Here, Plaintiff's proposed Pre-recorded No Consent Class and Do Not Call Registry Class are impermissibly vague for the same reasons. Both proposed classes turn on whether an individual received calls that were "for substantially the same purpose Defendant called Plaintiff." Complaint ¶ 44. But the allegations in the Complaint are unclear as to the purpose for which MOMI allegedly called Plaintiff. Plaintiff alleges that he received six calls from MOMI, three of which played a prerecorded message from "Kevin" seeking to share "some great news" that "[Plaintiff's] family will directly benefit from[.]" Complaint, ¶¶ 35-37. It was not until Plaintiff's attorney called the callback number from Plaintiff's voicemail that he even became aware that these calls were allegedly from MOMI. Simply put, Plaintiff's Complaint is vague even as to the purpose of the calls *he* allegedly received, much less whether the putative class members received calls for the same purpose. This alone precludes determining class membership by reference to objective criteria.

To this end, Plaintiff's class definitions are not clearly or objectively defined, because the allegations in the Complaint do not clarify what it means for a call to be

made for "substantially the same purpose." As defined, it is uncertain how similar the purpose of the alleged calls must be for an individual to qualify for class membership. The proposed class definitions are unclear, for example, whether an individual must have received a voicemail from a MOMI representative seeking to share "some great news," or whether some other unidentified purpose will suffice.

Determining membership in Plaintiffs' proposed classes will therefore inevitably depend on the subjective determinations as to whether the purpose of the calls are "substantially similar" to those allegedly received by Plaintiff. Such classes are improper and cannot be certified under Rule 23. *Xavier*, 787 F. Supp. 2d at 1089 (holding that "[class] membership must be determinable from objective, rather than subjective, criteria," and denying certification of a class where membership depended on each individual's subjective estimate of his behavior); *Williams v. Oberon Media, Inc.*, No. CV 09-8764-JFW (AGRx), 2010 U.S. Dist. LEXIS 148295, at *8-11 (C.D. Cal. Apr. 19, 2010) (declining to certify several classes where determining membership would turn on the subjective statements of putative class members); *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 972-973 (S.D. Cal. 2016) (A proposed class fails Rule 23's requirements "if membership depends upon subjective factors such as a prospective member's state of mind").

### 3. Plaintiff's Proposed Classes Must Be Stricken as Overly Broad.

Plaintiff's proposed class definitions additionally fail to satisfy Rule 23's requirements because they are overly broad. A proposed class is overbroad and should be stricken when it includes individuals who do not have a valid claim against the defendant. *See Bauman v. Saxe*, No. 14-cv-01125-RFB-PAL, 2019 U.S. Dist. LEXIS 4567, at *7 (D. Nev. Jan. 10, 2019) (holding that an overly broad TCPA class that included members who could not recover under the TCPA could not be certified); *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1045–46 (N.D. Cal. 2014) (granting motion to strike class definition as overbroad where it included within the class

individuals who had not experienced any issue or defect with defendant's product at issue); *Sanders v. Apple*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class allegations because the proposed class definition "necessarily includes individuals who did not purchase" the product at issue); *Enoh I Enoh v. Hewlett Packard Enter. Co.*, No. 17-cv-04212-BLF, 2018 U.S. Dist. LEXIS 115688, at *42 (N.D. Cal. July 11, 2018) (granting motion to strike overly broad class at the pleadings stage). And in a class action, each class member must establish Article III standing in order to pursue a claim for relief. *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1023 (9th Cir. 2020). Thus, a proposed class is likewise overbroad when it includes members that lack standing under Article III. *See Moon v. Cty. of Orange*, No. SACV 19-258, 2020 U.S. Dist. LEXIS 88102, at *19 (C.D. Cal. Mar. 18, 2020) (citing *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012)) (granting defendant's motion to strike class allegations where a proposed class included individuals who lacked standing, reasoning that "no class may be certified if it includes members that lack standing").

Indeed, courts in the Ninth Circuit and in other circuits have consistently denied certification where class definitions include both harmed and unharmed members. *See Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482-83 (N.D. Cal. 2011) (finding a class definition overbroad where the proposed class included persons who were not damaged); *Junod v. NWP Servs. Co.*, No. 8:14-cv-1734, 2016 U.S. Dist. LEXIS 195195, at *15 (C.D. Cal. July 18, 2016) (same); *see also Mazur v. eBay*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (rejecting a class definition as imprecise and overbroad where it included unharmed persons); *Dioquino v. Sempris, LLC*, No. CV 11-05556, 2012 U.S. Dist. LEXIS 183643, at *13 (C.D. Cal. April 9, 2012) (holding the class definitions were overbroad and subject to denial of certification "because Plaintiff's definitions will naturally include members who were unharmed"); *Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where proposed class definition "impermissibly include[d]

members who have no cause of action"); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of class certification because the proposed class included members who had no cause of action as a matter of law).

As explained more fully in MOMI's Motion to Dismiss for Lack of Standing [ECF No. 18], TCPA plaintiffs (and putative class members) lack Article III standing to bring claims for calls that go unnoticed, because such calls do not cause any concrete harm that the TCPA was enacted to prevent. *See Shuckett v. DialAmerica Mktg.*, No. 17cv2073, 2018 U.S. Dist. LEXIS 127049, at *9-11 (S.D. Cal. July 29, 2019). And here, Plaintiff's proposed class definitions are not limited to individuals who have suffered a concrete harm, for example, by noticing the calls placed by MOMI. Plaintiff's Do Not Call Registry Class includes all persons who "Defendant (or an agent acting on behalf of Defendant) called more than one time" on their residential cell phone or landline, where such cell phone or landline was registered on the DNC—regardless of whether such persons actually heard or noticed the calls. Complaint, ¶ 44. Plaintiff's proposed Pre-recorded No Consent Class likewise includes "[a]ll persons" MOMI called "using a pre-recorded voice message . . . on their cell phone number or residential landline," and not limited to those who actually noticed such calls. *Id*. In other words, Plaintiff's proposed Do Not Call Registry Class and Pre-recorded No Consent Class include individuals who did not suffer any concrete injury, and therefore lack standing to assert claims under the TCPA. Such class definitions are patently overbroad and should be stricken. *See Moon*, 2020 U.S. Dist. LEXIS 88102, at *19.

### 4. **Certification Under Rule 23(b)(3) is Improper Because Common Issues Cannot Predominate Across the Putative Classes.**

For a class to be certified under Rule 23(b)(3), "questions of law or fact common to class members [must] predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "The predominance inquiry of Rule

23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Heskowitz v. Apple, Inc.*, 301 F.R.D. 460, 469 (N.D. Cal. 2014) (internal quotation marks and citation omitted). It requires the court to consider "how a trial on the merits would be conducted if a class were certified." *Id*. (quoting *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008)). The predominance requirement "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Id*. "To meet the predominance requirement, 'common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication.'" *Id*. (quoting *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014)).

Here, the Complaint is devoid of any allegations demonstrating that the issue of consent will be subject to generalized proof across the proposed classes. A call placed with consent is lawful. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. §64.1200(c)(2)(ii). Thus, prior express consent is the primary substantive issue in a TCPA case. *Gene & Gene*, 541 F.3d at 327, 329 (reversing TCPA class certification because "the predominant issue of fact is undoubtedly one of <u>individual</u> consent" which was not subject to common proof where defendant obtained the recipients' fax numbers over time from a variety of sources) (emphasis in original).

Plaintiff's proposed classes apparently include individuals who received calls alleged placed by MOMI or an agent acting on its behalf. Complaint, ¶ 44. While Plaintiff alleges that he has "no relationship" with MOMI or any of its affiliates and did not consent to receive the calls at issue, the allegations in the Complaint are insufficient to establish how other putative class members came to receive the calls at issue. Instead, the Complaint merely states in a conclusory manner that "Mutual of Omaha does not have consumers' prior express written consent to make pre-recorded solicitation calls[.]" *Id*. ¶ 27.

Courts have consistently found that where individualized consent inquiries are required, class treatment is inappropriate. *Revitch v. Citibank, N.A.*, No. C 17-06907, 2019 U.S. Dist. LEXIS 72026, at *14 (N.D. Cal. Apr. 28, 2019) (denying class certification in part because individualized issues of consent will predominate at trial); *Katz v. Am. Honda Motor Co.*, 2017 U.S. Dist. LEXIS 116191, at *9 (C.D. Cal. June 29, 2017) (declining to certify a TCPA class because "individualized inquiries and determinations as to consent predominate"). Based upon the Complaint's allegations, there is no plausible basis to conclude that the issue of consent for calls allegedly placed by MOMI and/or its agents is subject to generalized proof across the class.

Further, both of Plaintiff's proposed classes include individuals to whom MOMI or its agents allegedly called "for substantially the same purpose Defendant called Plaintiff." Complaint, ¶ 44. Thus, for each putative class member, the Court would need to inquire into the purpose of the call to determine membership. And the Complaint again lacks any factual allegations indicating that such a determination is amenable to class-wide proof. Accordingly, Plaintiff's class allegations should be stricken.

### 5. Certification Under Rule 23(b)(2) is Likewise Improper Because the Primary Relief Sought are Monetary Damages.

Rule 23(b)(2) provides that a class action is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (citations omitted). "[Rule 23(b)(2)] does not authorize class certification when each individual class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61. "A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where such relief is merely incidental to

[the] primary claim for injunctive relief." *Zinser*, 253 F.3d at 1195 (citation and internal quotation marks omitted).

Plaintiffs seeking damages under the TCPA for each unlawful text message are therefore not eligible for Rule 23(b)(2) certification, "regardless of Plaintiffs' parallel request for injunctive relief." *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013); *see also McCurley v. Royal Seas Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2019 U.S. Dist. LEXIS 52173, at *85-86 (S.D. Cal. Mar. 27, 2019) ("A TCPA plaintiff who seeks an award of statutory damages for each alleged TCPA violation is primarily interested in money damages."); *see also Fisher v. MJ Christensen Jewelers, LLC*, No. 2:15-cv-00358-RFB-NJK, 2018 U.S. Dist. LEXIS 36048, at *21 (D. Nev. Mar. 6, 2018) (holding that a TCPA plaintiff's request for injunctive relief was incidental to her claim for monetary damages where she sought to recover $12 million in damages, as "damages are fundamental to Plaintiff's case.").

Here, Plaintiff and the potential members of the putative classes primarily seek monetary damages for the alleged violations of the TCPA. Under the first cause of action, they seek "a minimum of $500 in damages for each violation, and up to $1,500 in damages for each violation in the event that the Court determines that Defendant's conduct was willful and knowing." Complaint, ¶ 53. For the second cause of action, they seek "up to $500 in damages for such violations of 47 C.F.R. § 64.1200." *Id*. ¶ 58. Because Plaintiff and the potential members of the putative classes primarily seek monetary relief and individualized awards, which purported amounts will rest on the specific number of calls received by each putative class member, certification under Rule 23(b)(2) is improper. *See Dukes*, 564 U.S. at 360-61; *Connelly*, 294 F.R.D at 579.

### 6. The Court Should Likewise Strike Plaintiff's Immaterial Allegations.

Rule 12(f) provides that a court may strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Design Art v. NFL Props., Inc.*, No. 00CV593, 2000 U.S. Dist. LEXIS 20172, at *13 (S.D. Cal. Nov. 27, 2000) (quoting *Fantasy, Inc. v. Foggerty*, 984 F.2d 1524, 1527 (9th Cir. 1987)). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id*.

As explained in MOMI's contemporaneously filed Motion to Dismiss for Lack of Standing [ECF No. 18], Plaintiff lacks Article III standing to bring DNC claims under § 227(c)(5) of the TCPA for the calls that went unnoticed on January 15, 2020, February 5, 2020, and February 18, 2020[2] because these calls did not cause any concrete harm that the TCPA was enacted to prevent. The Court should therefore strike Plaintiff's allegations related to the three calls for which he does not allege that MOMI or its agent left a prerecorded message. These alleged calls are immaterial to the remainder of Plaintiff's claims and should therefore be stricken from the Complaint.

The Court should also strike paragraph 29 of the Complaint, in which Plaintiff cites to purported online complaints by anonymous users regarding "unsolicited, pre-recorded calls they received from Mutual of Omaha." *See* Complaint, ¶ 29. These unverified comments by unidentified users are unreliable at best and plainly cannot support any of Plaintiff's claims at issue here. Moreover, even if the comments were entitled to any credence (which they are not), comments regarding different calls, from different locations, and on different dates are wholly unrelated to Plaintiff's claims or any of MOMI's defenses. The Court should therefore strike these allegations as immaterial. *See Design Art*, 2000 U.S. LEXIS 20172, at *13-14 (striking plaintiffs' allegations that purportedly set forth other instances that plaintiffs

---

[2] Plaintiff has conceded that these three unanswered calls do not form the basis of his prerecorded voice claims under § 227(b)(1)(A) and (B) of the TCPA. *See* [ECF No. 15].

believed evidenced a "custom and habit of usurping other's designs and using the same as their own"); *Porter v. Fairbanks Capital Corp.*, No. 01 C 9106, 2003 U.S. Dist. LEXIS 8636, at *7 (N.D. Ill. May 21, 2003) (striking exhibit containing fifty pages of various complaints internet users posted regarding the practices of numerous mortgage servicers).

### C. The Court Should Not Wait Until the Certification Stage to Address These Definitional Defects.

As discussed above, Plaintiff's proposed classes cannot be certified as defined. The classes are ill-defined and vague, masking Plaintiff's true certification theory to the detriment of MOMI.

Undoubtedly Plaintiff will ask the Court to overlook these flaws and allow him to leverage the cumbersome machinery of class discovery without ever giving MOMI a look at the true classes he intends to represent. Then—he will suggest—only at the time of class certification need he reveal his true intentions with respect to the scope of the classes, affording defendants a limited opportunity to oppose the newly crafted definitions with no time for targeted discovery.

That is powerfully unfair and not the way class actions should work—even if there is some authority for allowing "moving target" class definitions in this district. MOMI has properly raised valid challenges to the proposed class definitions as pleaded and Plaintiff should be called to task for his errant allegations here and now, rather than being afforded a free pass to the certification stage. *See* Fed. R. Civ. P. 23(c)(1)(A); *Gen Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Enoh I Enoh*, 2018 U.S. Dist. LEXIS 115688, at *42-43 ("[T]he Court finds that imposing time limitations on the class definition at the outset of the litigation is necessary to protect Defendants from burdensome and unnecessary class discovery on barred claims and individuals").

## IV. CONCLUSION

For the foregoing reasons, MOMI respectfully requests that the Court strike the class allegations and immaterial allegations from Plaintiff's Complaint.

DATED: July 23, 2020　　　　　　　　　　　SQUIRE PATTON BOGGS (US) LLP


*/s/ Petrina A. McDaniel*
Eric J. Troutman (State Bar # 229263)
eric.troutman@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
T: 213.624.2500
F: 213.623.4581

Petrina A. McDaniel (*admitted pro hac vice*)
Petrina.McDaniel@squirepb.com
1230 Peachtree St NE, Suite 1700
Atlanta, GA 30309
T: 678.272.3207
F: 678.272.3211

Shing Tse (*admitted pro hac vice*)
Shing.Tse@squirepb.com
600 Travis Street, Suite 6200
Houston, Texas 77006
T: 713.546.5850
F: 713.546.5830

Attorneys for Defendant

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 23, 2020, a copy of the foregoing **DEFENDANT MUTUAL OF OMAHA MORTGAGE, INC.'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS FROM PLAINTIFF'S COMPLAINT** has been served via the CM/ECF filing system, to the following:

Amanda F. Benedict, Esq.
Law Office of Amanda F. Benedict
7710 Hazard Center Dr., Ste E-104
San Diego, CA 92108
Telephone: (760) 822-1911
Facsimile: (760) 452-7560
amanda@amandabenedict.com

*Attorneys for Plaintiff*

                              */s/ Petrina A. McDaniel*
                              Petrina A. McDaniel